# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS BADER, CHARLES DOYLE, and RALPH J. RINA, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 14 C 2589 |
| v. | ) ) | Judge Jorge L. Alonso |
| UNITED AIRLINES, INC., UNITED CONTINENTAL HOLDINGS, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Douglas Bader, Charles Doyle, and Ralph Rina, have brought this action against defendants, United Airlines, Inc. and its parent company, United Continental Holdings, Inc. (collectively, "United"), making claims of age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), age discrimination under civil rights statutes of the plaintiffs' respective states, wrongful discharge, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and interference with prospective economic advantage. United has moved to dismiss under Rule 12(b)(6), contending that the plaintiffs' claims are precluded, preempted or legally insufficient. For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiffs were all Pilot Instructor/Evaluators ("I/Es") at Continental Airlines ("Continental") when Continental merged with United. United's longstanding practice, contrary to Continental's, is to require all I/Es to be "line-qualified," *i.e.*, to be qualified to fly a revenue-

producing flight carrying paying passengers. Federal Aviation Administration ("FAA") regulations require all line-qualified pilots to be under the age of 65.

After the merger, United and the Airline Pilots Association, International, plaintiffs' union, negotiated a collective bargaining agreement, the United Pilots Agreement ("UPA"). The UPA, consistently with United's pre-merger practice, required all I/Es to be line-qualified. United and ALPA implemented the line-qualification requirement via Letter of Agreement 18 (Compl. Ex. A), which effectively terminated I/Es such as the plaintiffs, who had reached the FAA mandatory retirement age, after a 12-month grace period.

Plaintiffs contend that United's requirement that all I/Es be line-qualified is totally arbitrary and age-discriminatory. United now moves to dismiss on various grounds.

## II. LEGAL STANDARDS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility

standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## III. ANALYSIS

### A. Preemption and Preclusion By Fair Treatment of Experienced Pilots Act

United claims that all of the plaintiffs' claims are preempted by the Fair Treatment of Experienced Pilots Act ("FTEPA") and associated federal regulations. The FTEPA requires all line pilots (but not I/Es) to be under the age of 65, 49 U.S.C. § 44729(a), and it requires air carriers to "continue to use pilot training and qualification programs approved by the [FAA], with specific emphasis on initial and recurrent training and qualification of pilots who have attained 60 years of age," 49 U.S.C. § 44729(h). Further, the FTEPA contains an express preemption provision that provides that "[a]n action taken in conformance with this section . . . may not serve as a basis for liability or relief in a proceeding, brought under any employment law or regulation, before any court or agency of the United States or of any State or locality," 49 U.S.C. § 44729(e)(2).

The FAA has authority to promulgate safety regulations governing commercial air operations. 49 U.S.C. § 44701. Part 121 of the FAA's Federal Aviation Regulations, 14 C.F.R. § 121 *et seq*, regulates the certification and operation of aircraft in commercial aviation. Although Part 121 includes extensive rules concerning training programs, it also permits air carriers to formulate an Advanced Qualification Plan ("AQP") for "qualifying, training certifying, and otherwise ensuring competency of crewmembers, . . . instructors, and evaluators," subject to FAA approval of the Plan, *see* 14 C.F.R. § 121.909. Allowing carriers to develop their own training programs is intended to "encourage[] innovation" in training methods and

ultimately "enhance professional qualifications to a level above the present standards that are provided in part[] 121." (Mot. Dismiss, Ex. 2. at i). Once an AQP is approved, the carrier must "[c]omply with all aspects of the approved AQP." (*Id.* at 2).

United contends that its AQP requires its I/Es to be line-qualified, and the FTEPA requires United to comply with its AQP, so plaintiffs' claims are preempted or precluded by the FTEPA.

This argument fails at several points. First, United has not demonstrated that its AQP requires I/Es to be line-qualified. It cites myriad provisions of various statutes and FAA advisory and guidance documents that at least arguably counsel in favor of such a requirement, but it has pointed to no provision of any document that it submitted to the FAA for approval as part of its AQP that requires I/Es to be line-qualified. (*See generally* Compl., Ex. 2 at 55 (describing process of "AQP Approval and Documentation").)

Second, even if United had produced any such document, this Court could not consider it at the motion to dismiss stage. At this stage, the Court can only consider the allegations of the complaint, documents that are attached to plaintiffs' complaint or to which the complaint explicitly refers, and documents of which the Court can take judicial notice. United's AQP is none of those.

Finally, even if the AQP clearly requires I/Es to be line-qualified, United has not explained why the FTEPA preempts plaintiffs' claim that the line-qualification requirement violated their rights when plaintiffs are I/Es, not pilots, and the FTEPA is directed to the requirements for *pilots* to fly revenue flights for commercial air carriers beyond the age of 60. *See* 49 U.S.C. § 44729; *c.f. E.E.O.C. v. Boeing Co.*, 843 F.2d 1213, 1220 (9th Cir. 1988). United has cited little authority other than the preemption and safety provisions of the FTEPA, 49

U.S.C. § 44729(e)(2) and (h)(1), to support its position that it must adhere to whatever aspect of its AQP requires I/Es to be line-qualified, or violate the FTEPA. The mere citation to these bare provisions is not sufficient to convince the Court that they have the effect United ascribes to them.

Plaintiffs assert that the case United cites, *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100 (D.C. Cir. 2011), provides no support for United in this case because "[i]n *Jones*, the plaintiff was a pilot who was suing because he was terminated as a pilot." (Resp. at 5.) In other words, the case is consistent with plaintiffs' position that the FTEPA applies only to pilots, and extending it to the I/Es who train pilots is simply a bridge too far. The Court agrees. At this stage, the Court cannot conclude that plaintiffs' claims are preempted by the FTEPA.

### B. Reasonable Factor Other Than Age Under ADEA

United next contends that its line-flying requirement for I/Es is a reasonable factor other than age ("RFOA"). *See* 29 U.S.C. § 623(f). United may well be correct, but it may not raise this defense at this stage of the proceedings.

The ADEA's exemption for actions based on RFOAs is an affirmative defense; the party raising it "must not only produce evidence raising the defense, but also persuade the factfinder of its merit." *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 87, 91-92, 95 (2008). A court may not grant a motion to dismiss on the basis of an affirmative defense unless the allegations of the complaint suffice to establish the defense. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

The Court cannot determine, based only on the allegations of plaintiffs' complaint and the other limited information the Court may consider at this stage, whether United's line-qualification requirement for I/Es is a RFOA. As explained above, United has not established that it is compelled by law to require its I/Es to be line-qualified. The only undisputed fact in the pleadings bearing on that issue is that the requirement was United's pre-merger practice, but this

Court is unwilling to hold that the line-flying requirement is reasonable based only on the fact that it was United's longstanding practice, without the benefit of any evidence that might be developed in discovery to show that, for all its longevity, the practice is arbitrary and unreasonable. *See Turner v. Jewel Food Stores, Inc.*, No. 05 C 5061, 2005 WL 3487788, at *3 (N.D. Ill. Dec. 21, 2005); *Ricciardi v. Elec. Data Sys. Corp.*, No. 03-CV-5285, 2005 WL 2782932, at *1 (E.D. Pa. Oct. 24, 2005).

At this stage, the Court cannot conclude that United's requirement that I/Es be line-qualified is a reasonable factor other than age.

### C. Bona Fide Occupational Qualification Under ADEA

United contends that its I/E line-qualification requirement is a bona fide occupational qualification ("BFOQ"). 29 U.S.C. § 623(f). Like a RFOA, a BFOQ is an affirmative defense that must be raised and proved by the defendant. *Meacham*, 554 U.S. at 91-92. As such, it may not ordinarily be resolved on a motion to dismiss.

A BFOQ must be at least "reasonably necessary to the essence of [the employer's] business." *W. Airlines v. Criswell*, 472 U.S. 400, 413 (1985). As intimated above, it is not clear at this stage that it is "reasonably necessary to the essence of the airline's operations," *id.* at 418, for I/Es—as contrasted with pilots[1]—to be line-qualified. United has not demonstrated that the law requires its I/Es to be under 65 or that there is any other reason why it is essential to the airline's operations for I/Es to be line-qualified. United's motion is denied as to the BFOQ defense.

---

[1] The Court is aware of a case in which a district court determined on a motion to dismiss that the FAA-mandated retirement age was a BFOQ, but that case is crucially distinguishable because it was brought by pilots, not I/Es. *See Carswell v. Air Line Pilots Ass'n Int'l*, 540 F. Supp. 2d 107, 116 (D.D.C. 2008). In this case, it is not clear at this stage why or whether the FAA's mandatory retirement age for pilots should apply to I/Es.

### D. ADEA Retaliation and Timing of Protected Activity

United claims that plaintiff Bader's retaliation claim fails because the complaint does not allege that he engaged in protected activity before the alleged retaliation occurred. According to the complaint, Bader filed a charge of discrimination with the EEOC and the state of Colorado on February 20, 2014. (Compl. ¶ 41.) However, the adverse employment actions allegedly taken by United occurred in 2013. (*Id.* ¶¶ 27-38, 55-58.)

Plaintiffs respond that Bader made an informal complaint of discrimination after United produced a seniority list that wrongfully listed plaintiffs at the bottom, and this informal complaint was protected activity that served as a predicate for retaliation. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009). The complaint does, in the vaguest possible terms, state that "Plaintiffs complained" after they saw the erroneous seniority list in spring 2013. (Compl. ¶ 29.)

The complaint is not well drafted in this respect—under the most natural reading of Count II, the plaintiffs' EEOC complaints were the actions that triggered the retaliation (*see id.* ¶¶54-55)—but the complaint contains sufficient allegations to survive a motion to dismiss. United cites *Peters v. Wal-Mart Stores E., LP*, 512 F. App'x 622, 626-27 (7th Cir. 2013) in support of its position that the vague reference to the fact that plaintiffs "complained" about the seniority list in 2013 (Compl. ¶ 29) cannot save plaintiffs' complaint. However, *Peters*—like many of the cases United has cited in its briefs—is of limited usefulness in ruling on the present motion because it was decided at the summary judgment stage, not on a motion to dismiss, as here. Plaintiffs' allegations as to plaintiff Bader, though sparse, provide fair notice of their claims to United and are sufficient to state a plausible claim. United's motion is denied as to Bader's retaliation claim.

## E.  Preemption of State Law Claims by Airline Deregulation Act

United contends that all of plaintiffs' state-law claims—their state statutory discrimination claims and their various common law claims—are preempted by the federal Airline Deregulation Act ("FADA")[2].  The FADA, which sought to improve the performance of the airline industry by "maxim[izing] reliance on competitive market forces," streamlined the regulations applicable to the airline industry, particularly those concerning airfares and trade practices.  *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).  "To ensure that the States would not undo federal deregulation with regulation of their own, the [FADA] included a pre-emption provision," *id.* at 378-79, which states that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law ***related to a price, route, or service*** of an air carrier."  49 U.S.C. § 41713 (emphasis added).

According to United, job requirements for I/Es, who train pilots to fly commercial airliners, are clearly "related to a . . .  service of an air carrier," especially considering that the Supreme Court has stated that the FADA's preemption provision has "an expansive sweep" and "is conspicuous for its breadth," *Morales*, 504 U.S. at 383, 384.  Congress explicitly stated in the FADA that the policy underlying the act included "assigning and maintaining safety as the highest priority in air commerce" and "preventing deterioration in established safety procedures, recognizing the clear intent, encouragement and dedication of Congress to further the highest degree of safety in air transportation and air commerce."  49 U.S.C. § 40101(a)(1) & (3). Training and evaluating pilots properly ensures the safety of the "services" that airlines provide, and Congress retained for the federal government the exclusive authority to regulate airline "services," 49 U.S.C. § 41713.

---

[2] In their briefs, the parties refer to the federal Airline Deregulation Act as the "FADA," but it should be noted that many decisions refer to the act as the "ADA."  The Court will adopt the parties' convention for consistency with their briefs and to avoid any confusion with the Americans with Disabilities Act.

Plaintiffs respond that the Supreme Court has warned that some state laws may relate to prices, routes or services in "'too tenuous, remote or peripheral a manner' to have preemptive effect," *Morales*, 504 U.S at 390 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)), and most of the United States Circuit Courts of Appeal to address whether the FADA preempts a state employment law claim have concluded that it does not. (Resp. at 11 (citing cases).) *See generally* Preemption by Airline Deregulation Act, 49 U.S.C. § 41713(b)(1), of State-Law Labor-Related Claim, 41 A.L.R. Fed. 2d 215 (Originally published in 2009). In reply, United cites a few contrary district court and state court decisions. (Reply at 11 n.2.) Neither the Supreme Court nor the Seventh Circuit has directly addressed whether the FADA preempts state employment law claims such as those in this case.

The Seventh Circuit has held that the term "service" in the FADA refers to "all elements of the air carrier service bargain," including "the transportation itself." *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1434 (7th Cir. 1996). This definition is quite broad, as compared with the definitions other circuits have formulated. *See Williams v. Midwest Airlines, Inc.*, 321 F. Supp. 2d 993, 995-96 (E.D. Wis. 2004) (citing cases in other circuits and holding that passengers' state law tort claims were preempted by FADA under *Travel All Over the World*, 73 F.3d at 1434). However, district courts in the Seventh Circuit have been reluctant to hold that employment law claims, as contrasted with tort claims by consumers or other business entities, are preempted by FADA. *See Hamilton v. United Airlines, Inc.*, 960 F. Supp. 2d 776, 784-86 (N.D. Ill. 2012) (whistleblower and retaliatory discharge claims not preempted); *Meyer v. United Airlines, Inc.*, 624 F. Supp. 2d 923, 931-32 (N.D. Ill. 2008) (retaliatory discharge claim not preempted). These decisions have reasoned that state

employment law claims are too tenuously related to "services" to be preempted by the FADA. This Court agrees with their analysis.

United asks the Court to hold that plaintiffs' claims, all rooted in allegations of age discrimination, are preempted because they interfere with the airline's responsibility under FADA to provide services safely, but there is nothing intrinsic to plaintiffs' age discrimination claim that necessarily implicates safety; rather, United's preemption argument arises from its contention, in *response* to plaintiffs' allegations, that it took the allegedly discriminatory action on the basis of airline safety. It would be inappropriate to hold that plaintiffs' claims are preempted based only on United's proffered justification for the challenged employment action, rather than on the sole basis of "the cause of action and the underlying state law on which it is founded." *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1466 (11th Cir. 1998).

Further, safety does not equate to "service" under the FADA because "safety is not an element over which airlines compete but is an implicit understanding that each airline undertakes to ferry its passengers safely to their chosen destination." *Hamilton*, 960 F. Supp. 2d at 785 (citing *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1260 (11th Cir. 2003)). "Accordingly, it does not serve the purposes of the [FADA] to pre-empt state law employment claims related to safety." *Branche*, 342 F.3d at 1260. Plaintiffs state-law claims based on allegations of age discrimination are too tenuously related to airline services to justify preemption by FADA. *See Aloha Islandair, Inc. v. Tseu*, 128 F.3d 1301, 1303 (9th Cir. 1997); *Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 85 (2d Cir. 1997); *LaRosa v. United Parcel Serv., Inc.*, 23 F. Supp. 2d 136, 143 (D. Mass. 1998).

### F.  Sufficiency of State Common Law Claims

United contends that plaintiffs' state common-law claims of wrongful discharge, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and

interference with prospective economic advantage must be dismissed for failure to state a claim. Because plaintiffs Bader, Doyle, and Rina all live in different states (Colorado, Kentucky and Arizona, respectively), the Court must apply the law of each of those states to each cause of action.

### 1. Wrongful discharge

Plaintiffs appear to concede that their wrongful discharge claims must be dismissed. The Court agrees that in all three states, common-law wrongful discharge claims are preempted by state civil rights statutes. *Endahl v. Vinnell Corp.*, No. 04-cv-426, 2006 WL 57496, at *10 (D. Colo. Jan. 10, 2006); *Miles v. Vasquez*, No. CV-07-1398-PHX-FJM, 2007 WL 3307020, at *1 (D. Ariz. Nov. 6, 2007); *Temple v. Pflugner*, 866 F. Supp. 2d 735, 744 (E.D. Ky. 2011). Count VI is dismissed.

### 2. Breach of covenant of good faith and fair dealing

Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing refers to a "contract" governing the "employment relationship between United and Plaintiffs." (Compl. ¶ 100, 102.) This "contract," although not specifically identified, can only be the UPA—at least, no other contract is identified—but any claim for breach of the covenant of good faith and fair dealing arising out of a collective bargaining agreement is preempted by federal labor law because it depends on interpretation of the collective bargaining agreement. *Manos v. United Food & Commercial Workers Int'l Union*, 9 F. Supp. 3d 473, 479-80 (D.N.J. 2014), *Civardi v. Gen. Dynamics Corp.*, 603 F. Supp. 2d 393, 398 (D. Conn. 2009), *Fiumara v. President & Fellows of Harvard Coll.*, 526 F. Supp. 2d 150, 160 (D. Mass. 2007) *aff'd*, 327 F. App'x 212 (1st Cir. 2009), *Rogers v. Nstar Elec.*, 389 F. Supp. 2d 100, 107-08 (D. Mass. 2005). Count VII is dismissed.

### 3. Intentional Infliction of Emotional Distress

Plaintiffs have not stated plausible claims of intentional infliction of emotional distress ("IIED") under the law of any of the three plaintiffs' states. The allegations against United simply do not rise to the required level of extreme or outrageous conduct. *See Temple*, 866 F. Supp. 2d at 745 (conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (citing *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789 (Ky. 2004) *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014)); *Barkclay v. Wal-Mart, Stores, Inc.*, No. 07-CV-981, 2007 WL 4410257, at *7-8 (D. Ariz. Dec. 13, 2007) (same); *Martensen v. Koch*, No. 13-CV-02411, 2014 WL 3057172, at *7-8 (D. Colo. July 7, 2014) (same).

### 4. Interference with Prospective Economic Advantage

Plaintiffs' interference claim may be preempted for reasons similar to those that preempt their claim of breach of the covenant of good faith and fair dealing, *see Mohammed v. Am. W. Holding Corp.*, 361 F. Supp. 2d 982, 984-85 (D. Minn. 2005), but in any case it fails to state a claim under the law of any of the three plaintiffs' states. Under the law of each of the three states, a defendant commits the tort of intentional interference when he interferes with the plaintiff's relationship with some third party. The tort requires three parties, not two; that is, an employee does not state a claim for intentional interference with prospective economic advantage by alleging that his employer took some adverse employment action against him. *See Watts v. Lyon Cty. Ambulance Serv.*, 23 F. Supp. 3d 792, 812-13 (W.D. Ky. 2014) *aff'd*, 597 F. App'x 858 (6th Cir. 2015), *Gray v. Wal-Mart Stores, Inc.*, No. 3:11-CV-367-H, 2012 WL 4212926, at *6-7 (W.D. Ky. Sept. 18, 2012); *Morrow v. Boston Mut. Life Ins. Co.*, No. CIV. 06-

2635, 2007 WL 3287585, at *10-11 (D. Ariz. Nov. 5, 2007); *Rader v. Elec. Payment Sys., LLC*,

No. 11-CV-01482, 2012 WL 4336175, at *4 (D. Colo. Sept. 21, 2012). Count IX is dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court grants in part and denies in part United's

motion to dismiss [23]. The motion is denied as to Counts I-V. The motion is granted with

respect to Counts VI-IX, which are dismissed with prejudice.

**SO ORDERED.**

**ENTERED: July 9, 2015**

**HON. JORGE L. ALONSO**
**United States District Judge**