**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DOUGLAS BADER, CHARLES DOYLE, and RALPH J. RINA, | ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 2589 |
| v. | ) ) | Judge Jorge L. Alonso |
| UNITED AIRLINES, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Douglas Bader, Charles Doyle, and Ralph Rina have brought this action against their former employer Defendant United Airlines, Inc. ("United"). Plaintiffs bring age discrimination and retaliation claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Plaintiffs also bring related state law claims. Before the court is United's motion for summary judgment and Plaintiffs' partial motion for summary judgment as to liability.[1] For the reasons set forth below, United's motion for summary judgment [70] is granted, and Plaintiffs' partial motion for summary judgment [109] is denied.

## BACKGROUND

Prior to 2010, Plaintiffs were Pilot Instructor/Evaluators ("I/Es") at Continental Airlines ("Continental"). Federal law prevents anyone over the age of 65 from serving as a pilot in most

---

[1] Plaintiffs do not specify which claims they intended to cover in their partial motion for summary judgment. The court construes the motion as seeking summary judgment on all remaining claims.

commercial operations.  While working for Continental, Plaintiffs were unable to fly the line[2]

since they were over 65 years old, but Plaintiffs were able to work for Continental as Non-Line

Qualified Flight Instructors ("NLQFIs").  In 2010, United entered into a merger with

Continental.  Airline Pilots Association, International ("ALPA")  is the labor organization that

represented Plaintiffs and other I/Es at the time of the merger.  After the merger, United and

ALPA negotiated a new collective bargaining agreement referred to as the United Pilot

Agreement ("UPA"), which became effective December 18, 2012.  The UPA included a

qualification for the I/E position that United had in place since at least 1989 ("United Policy").

The United Policy required that all I/Es fly the line at least 30 days a year.  As a result, after the

merger, Plaintiffs could not serve as I/Es for United since they were unable to fly the line.

In a Letter of Agreement, dated December 18, 2012 ("LOA 18"), which was made a part

of the UPA, United and ALPA agreed to a transitional period of twelve months after the

effective date of the UPA that allowed NLQFIs who exceeded the statutory age limit for pilots to

continue to work in the I/E position.   The transitional period ran from December 2012 through

December 2013.  During the transitional period, United also utilized Continental's Advanced

Qualification Program ("AQP").[3]   Under the UPA, after the transitional period, NLQFIs were

treated like any other pilots and were removed from the pilot seniority list when they reached the

statutory age limit.  In June 2013, Plaintiffs sent a letter ("June 2013 Letter") to the Continental

ALPA Master Executive Council ("Council") requesting that their seniority be restored and that

their retirement date be rescinded.   The Council responded in July 2013 that it did not have

unilateral authority to strike or modify provisions of the UPA.   Plaintiffs contend that they did

---

[2]  The phrase "flying the line" refers to the piloting of scheduled passenger flights in revenue service.
[3]  Under an AQP an airline can create a customized pilot training and evaluation program, which must be reviewed
and approved by the Federal Aviation Administration ("FAA"). As part of the merger United adopted Continental's
AQP subject to a transition plan.  The AQP was eventually amended to bring it in compliance with United's policy
in regard to NLQFI's.

not understand the Council's response at that time to be a final rejection of Plaintiffs' requests and so delayed in pursuing certain claims. Plaintiffs ultimately all retired near the end of the transitional period.

On April 10, 2014, Plaintiffs filed the instant action and included in their complaint ADEA disparate treatment and disparate impact discrimination claims (Count I), ADEA retaliation claims (Count II), a claim by Doyle under the Kentucky Civil Rights Act, KRS 344.010 *et seq.* (Count III), a claim by Bader under the Colorado Anti-discrimination Act ("CADA"), § 24-34-301 *et seq.* (Count IV), a claim by Rina under the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41–1401 *et seq.* (Count V), wrongful discharge claims (Count VI), breach of covenant of good faith and fair dealing claims (Count VII), intentional infliction of emotional distress claims (Count VIII), and interference with prospective economic advantage claims (Count IX). On January 16, 2015, this action was transferred to the undersigned judge. On July 9, 2015, this court granted in part United's motion to dismiss and dismissed all claims in Counts VI-IX. United has filed a motion for summary judgment on the remaining claims and Plaintiffs have filed a partial motion for summary judgment as to liability on the remaining claims.[4]

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be

---

[4] This action is related to *Bader v. Airline Pilots Association, International* (14 C 6415) .

denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681–82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). It is well settled that at the summary-judgment stage, the court does not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; those are jury functions. *See Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526–27 (7th Cir. 2005).

## DISCUSSION

### I.  ADEA Retaliation Claims (Count II)

United argues that Plaintiffs have failed to exhaust their administrative remedies for their ADEA retaliation claims.  A plaintiff seeking to bring an ADEA claim in federal court must first exhaust his administrative remedies.  *Kleber v. CareFusion Corp.*, 888 F.3d 868, 889 (7th Cir. 2018); *Straub v. Jewel Food Stores, Inc.*, No. 17 CV 6401 2018 WL 1993394, at *2 (N.D. Ill. April 27, 2018) (stating that "a plaintiff must exhaust his administrative remedies by presenting any . . . ADEA claims to the EEOC before filing a lawsuit").  An ADEA claim that is not specifically referenced in an administrative charge is only cognizable if it is "'like or reasonably

related to the allegations of the charge and growing out of such allegations.'" *Kleber*, 888 F.3d at 889 (quoting *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996)); *see also Krzeptowski v. Corrugated Supplies Co., LLC*, No. 17 CV 938, 2018 WL 1378179, at *4 (N.D. Ill. March 19, 2018) (stating that "'[a]t a minimum, this means that the EEOC charge and the complaint must describe the same conduct and implicate the same individuals'") (quoting *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005)); *Belcher v. Springfield Coll.*, 17 CV 1086, 2018 WL 437793, at *2 (E.D. Wis. Jan. 16, 2018) (stating that "[b]efore filing a lawsuit alleging claims under Title VII and the ADEA, an individual must exhaust her administrative remedies by: (1) filing a timely charge of discrimination with the EEOC; and (2) filing suit within ninety days of receiving a right to sue letter from the EEOC with respect to the timely charge"); *Little v. Illinois Dep't of Pub. Health*, No. 16 CV 10377, 2017 WL 5903835, at *2–3 (N.D. Ill. Nov. 30, 2017) (stating that "[t]he proper scope of a judicial proceeding following an EEOC charge is limited by the nature of the charges filed with the EEOC," and that "plaintiffs can only pursue claims in civil proceedings in federal court that could reasonably be expected to grow out of the administrative charges") (internal quotations omitted) (quoting *Hopkins v. Bd. of Educ. of City of Chi.*, 73 F. Supp. 3d 974, 982 (N.D. Ill. 2014) and *Reynolds v. Tangherlini*, 966 F.3d 1093, 1099–100 (7th Cir. 2013)).

It is undisputed that prior to bringing the instant action, Plaintiffs did not assert unlawful retaliation in any of their filings with the Equal Employment Opportunity Commission ("EEOC") or other administrative agencies. United asserts in Paragraphs 81-84 of its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment that Plaintiffs asserted unlawful discrimination, but did not assert retaliation in their administrative charges. (United Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment

"USOF" Dkt. No. 71 ¶¶ 81-84). United also contends that Bader actually affirmatively represented on his EEOC questionnaire that he had not ben retaliated against. (USOF ¶ 84). Plaintiffs agree to certain of United asserted facts, and offer arguments and objections as to certain others. (R USOF ¶ 81-84). Plaintiffs, however, fail to cite to the record or evidence to support any denials and such facts are therefore deemed to be undisputed pursuant to Local Rule 56.1. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (stating that "where a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial"); *see also Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) (stating that "[t]he district court's discretion to require strict compliance with Local Rule 56.1 has been upheld time and again").

Plaintiffs have not shown, based on the facts in this case, that their retaliation claims are like or reasonably related to their discrimination claims or would be expected to grow out of an investigation of the charges. *See Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010) (stating that "[n]ormally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another") (quoting *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003)); *Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 663 (N.D. Ill. 2016) (stating that "settled precedent holds that allegations of *discrimination* in an EEOC charge are not like or reasonably related to allegations of *retaliation*, and therefore are not sufficient to support a retaliation claim") (emphasis in original). Plaintiffs' retaliation claims also stem from more than retaliation related to the filing of the instant action. *See Zegarra*, 218 F. Supp. 3d at 663 (explaining that generally "a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first [EEOC] charge") (internal quotations

omitted) (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989)). This is apparent by the fact that Plaintiffs contend that some of the retaliation occurred prior to the filing of the instant action. (Plaintiffs' Memorandum of Law in Opposition to United's Motion for Summary Judgment and in Support of Plaintiffs' Partial Motion for Summary Judgment "P. Opp./SJ" Dkt. No. 109 at 3).

Plaintiffs' main argument is that the majority of the alleged retaliatory conduct occurred after they had already filed their discrimination charges. That would not, however, explain why Plaintiffs did not assert the alleged retaliation that occurred before their charges or excuse Plaintiffs from the need to file separate charges for their retaliation claims. In addition, once Plaintiffs received right-to-sue letters on their retaliation claims, Plaintiffs could have sought leave to amend their complaint in this matter to add such claims. The record, however, does not reflect that Plaintiffs took any such steps to properly exhaust their administrative remedies as to their ADEA retaliation claims.

The court notes that even if Plaintiffs had exhausted their administrative remedies, the only retaliatory actions alleged after the filing of the EEOC complaints are: (1) the 777 Simulator was moved from the Houston Training Facility to Denver in the summer of 2013; (2) Plaintiffs were not invited to a November 2013 Standards Meeting, and (3) Plaintiffs were declared to be surplus and were forced to bid on a new position in November 2013. (P. Opp./SJ at 4). In regard to the move of the 777 Simulator, it is undisputed that the simulator was moved from Houston because United needed the space in Houston for a new simulator and that the move affected all I/Es whether line qualified or not. (R USOF ¶¶ 67–68). In regard to the November 2013 Standards Meeting, it is undisputed that the purpose of the meeting was to train I/Es as to regulations and changes in the upcoming year and Plaintiffs were not going to be employed as

I/Es in the upcoming year. (R USOF ¶¶ 77–78). In regard to bidding for the position in 2013, it is undisputed that all I/Es in Houston were deemed surplus, whether line qualified or not. (R USOF ¶¶ 69–72). Thus, even if Plaintiffs had exhausted their administrative remedies on their ADEA retaliation claims, such claims would fail on their merits. Therefore, United's motion for summary judgment on the ADEA retaliation claims is granted and Plaintiffs' partial motion for summary judgment on the ADEA retaliation claims is denied.

## II. Age Discrimination Claims (Counts I, III, IV, and V)

United argues that one age discrimination claim has not been administratively exhausted and that certain age discrimination claims are untimely. In addition, both sides argue that they have pointed to sufficient evidence of age discrimination or a lack of evidence of age discrimination to prevail on their motions for summary judgment.

### A. Exhaustion of Administrative Remedies

United argues that Rina has failed to exhaust the administrative remedies for his ACRA claim. A plaintiff must first exhaust available administrative remedies before filing an ACRA claim in court. *See Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013, 1017–18 (D. Ariz. 2011) (stating that "ACRA . . . requires administrative exhaustion before a plaintiff can file a claim"); *Madden-Tyler v. Maricopa Cty.*, 943 P.2d 822, 828 (Ct. App. Ariz. 1997) (stating that "ACRA requires that a charge first be filed with the" Arizona Civil Rights Division ("ACRD") "within 180 days after the alleged unlawful employment practice occurred"); *see also Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1194 (9th Cir. 2016) (addressing charge filed with

EEOC and ACRD); *Lopez v. Produce Exch.*, 171 F. App'x 11, 13 (9th Cir. 2006) (referencing "period in which the ACRD and EEOC respectively possessed exclusive jurisdiction"). Plaintiffs do not dispute that Rina failed to pursue an administrative remedy with the EEOC in Arizona or with the ACRD. Plaintiffs instead claim that Rina initially filed a claim in Arizona, but since Rina had worked in Texas, the complaint was transferred to the Texas Commission on Human Rights. Even if that were true, such facts at best suggest that Rina may have exhausted some unpled Texas state law claim. United asserts and Plaintiffs do not dispute that Rina pursued a charge in Texas with the Texas Workforce Commission Civil Rights Division. (R USOF ¶ 83). The undisputed facts show that Rina has not pursued an administrative charge through the Arizona administrative agencies that would enable him to bring an ACRA claim. Accordingly, summary judgment for United on this claim is granted.

    B.  Timeliness of Certain Claims

    United argues that Bader's ADEA and CADA claims are untimely. A plaintiff seeking to bring an ADEA claim in court must file the claim "within 300 days of the alleged discriminatory act or unlawful practice." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890–91 (7th Cir. 2016) (citing 29 U.S.C. § 626(d)(1)(B)). A plaintiff seeking to pursue a CADA claim must file "a charge with the" Colorado Civil Rights Division "within six months after the unfair or discriminatory employment action." *Matlock v. Denver Health & Hosp. Auth.*, No. 12 CV 3164, 2013 WL 6168395, at *2 n.2 (D. Colo. Nov. 25, 2013) (citing Colo. Rev. Stat. § 24–34–403); *Shepherd v. U.S. Olympic Comm.*, 94 F. Supp. 2d 1136, 1147 (D. Colo. 2000) (stating that "CADA requires the filing of a discrimination charge within six months of the alleged discriminatory practice"). United contends that Bader knew of his alleged injury resulting from discrimination on December 18, 2012, which was the effective date of LOA 18. United contends

9

that Bader did not file his charge of discrimination until February 20, 2014, well after the limitations periods had run for the ADEA and CADA claims. Plaintiffs acknowledge that Bader filed outside the limitations periods, but contend that in mid-summer 2013 ALPA indicated to Plaintiffs that it was going to review the possibility of having LOA 18 amended or withdrawn. Plaintiffs contend that such representations by ALPA caused Bader to delay his filings.

Although Plaintiffs do not specifically assert the legal basis for their argument, it appears that Plaintiffs are arguing that the equitable tolling doctrine and/or the estoppel doctrine apply in this instance.[5] A statute of limitations period can be tolled under the equitable tolling doctrine "when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot determine information essential to bringing a complaint." *Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017) (quoting *Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7th Cir. 1998) (internal quotations omitted). Under the equitable estoppel doctrine, a party is estopped "from asserting the expiration of the statute of limitations as a defense when that party's improper conduct has induced the other into failing to file within the statutory period." *Liberty*, 860 F.3d at 1020 (quoting *Ashafa*, 146 F.3d at 462) (internal quotations omitted). In the instant action, the equitable tolling doctrine is not applicable. The undisputed facts show that Bader was aware of his alleged injury in December 2012 and he has not pointed to evidence showing that he was unable to file his claims in time. Nor is the equitable estoppel doctrine applicable in this case. Plaintiffs allege conduct by ALPA, not United, that they claim caused them to delay the filings. Plaintiffs have not pointed to evidence showing that United induced Bader to delay timely filing.

---

[5] Unlike in case number 14 C 6415 that Plaintiffs brought against ALPA, the law that relates to duty of fair representation claims brought against a union that tolls a limitations period for such claims during the pendency of internal union procedures is not applicable in this case. *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees*, 782 F.2d 674, 681 (7th Cir. 1986).

United is thus not estopped from asserting the statute of limitations defense and Bader's age discrimination claims are untimely.

### C. Sufficiency of Evidence of Age Discrimination

The parties contend that they have pointed to sufficient evidence of age discrimination or lack of evidence of age discrimination and are entitled to summary judgment as a matter of law on the age discrimination claims.

#### 1. Disparate Treatment Claims

As indicated above, Plaintiffs are pursuing ADEA disparate treatment discrimination claims. Plaintiffs' state-law age discrimination claims are evaluated under the same standard applied to ADEA claims. *See Maynard v. Three Rivers Med. Clinics, Inc.*, No. 17 115 HRW, 2018 WL 738963, at *2 (E.D. Ky. Feb. 6, 2018) (stating that "[t]he Kentucky Civil Rights Act's discrimination provisions track [ ] federal law and should be interpreted consonant with federal interpretation" and that "[a]ccordingly, claims brought pursuant to the Kentucky statute analyzed under the same standards as federal claims brought under the ADEA") (internal quotations omitted) (quoting *Gragg v. Somerset Technical College*, 373 F.3d 763 (6th Cir. 2004)); *Applegate v. Heath Consultants, Inc.*, No. 16 CV 648, 2017 WL 3268871, at *6 (D. Colo. Aug. 1, 2017) (stating that "[t]he analysis of Plaintiffs' CADA claim does not differ from the ADEA analysis"); *White v. Home Depot USA Inc.*, 16 CV 1185, 2018 WL 704328, at *8 (D. Ariz. Feb. 5, 2018) (stating that "'[a]ge discrimination claims under the ACRA are analyzed under the same *McDonnell Douglas* framework as age discrimination claims under the ADEA'") (quoting

*Knowles v. U.S. Foodservice, Inc.*, No. 08 CV 1283, 2010 WL 3614653, at *3 (D. Ariz. Sept. 10, 2010)).

The ADEA protects individuals who are over 40 years old from discrimination. *See Formella v. Brennan*, 817 F.3d 503, 514 (7th Cir. 2016) (stating that "[t]he ADEA prohibits employment discrimination against people over 40 years old"). The ADEA provides in relevant part that "[i]t shall be unlawful for an employer-- . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ." 29 U.S.C. § 623(a)(1).

In an ADEA case, a plaintiff bears the burden of showing that "age was the but-for cause of the challenged adverse employment action." *Carson v. Lake Cty., Indiana*, 865 F.3d 526, 532 (7th Cir. 2017) (quoting *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 180 (2009)) (internal quotations omitted) (explaining that "[i]n this respect, the ADEA is narrower than Title VII of the Civil Rights Act of 1964, as Title VII also protects against mixed-motive discrimination"); *see also Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013) (stating that "[t]o establish an ADEA violation, 'an employee must show that age actually motivated the adverse employment action,'" and that "'[p]ut differently, age must have played a role in the employer's decision-making process and had a determinative influence on the outcome'") (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010)); *Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822, 837 (N.D. Ill. 2017) (explaining that "[a] plaintiff employee may prevail on an age discrimination claim if he can show that his termination would not have occurred 'but for' his employer's age-based discriminatory motive"); *Kawczynski v. F.E. Moran, Inc.*, 238 F. Supp. 3d 1076, 1083 (N.D. Ill. 2017) (stating that "at summary judgment, a plaintiff must also 'show evidence that could support a jury verdict that age was a but-for cause of the

employment action'") (quoting *Roberts v. Columbia Coll. Chicago*, 821 F.3d 855, 865 (7th Cir. 2016)).

In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit held that a plaintiff who is facing a defendant's motion for summary judgment in an employment discrimination case is not required to proceed under the traditional direct method of proof or the indirect *McDonnell Douglas* burden-shifting method of proof that were utilized by the courts in the past. *Ortiz*, 834 F.3d at 763–66; *Carson v. Lake Cty., Indiana*, 865 F.3d 526, 532 (7th Cir. 2017) (applying *Ortiz* in ADEA case). The Seventh Circuit stated that the ultimate inquiry must be "simply whether" when considering the evidence "as a whole," such evidence "would permit a reasonable factfinder to conclude that the plaintiff's" protected characteristic "caused the . . . discharge or other adverse employment action." *Ortiz*, 834 F.3d at 764–65 (stating that "[t]he sole question that matters" is "[w]hether a reasonable juror could conclude that" the plaintiff "would have kept his job if he" was outside the protected class, "and everything else had remained the same"). The Court in *Ortiz*, did not however, do away with the *McDonnell Douglas* burden-shifting method. *Id.* at 766 (stating that the "decision does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand"); *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (stating that *Ortiz* "did not alter" the *McDonnell Douglas* burden-shifting method); *Kawczynski*, 238 F. Supp. 3d at 1083 (stating that *Ortiz* "did not change the burden shifting method under" *McDonnell Douglas*). Instead, the *McDonnell Douglas* burden-shifting method remains "'a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases.'" *Kawczynski*, 238 F. Supp. 3d at 1083 (quoting *David*, 846 F.3d at, 224); *Nance v. NBCUniversal Media, LLC*, No. 16 CV 11635, 2018

WL 1762440, at *2 (N.D. Ill. April 12, 2018) (stating that "*Ortiz* made clear that its holding did not alter the so-called *McDonnell Douglas* method of establishing a prima facie case of discrimination . . . , which remains a valid but nonexclusive method of doing so").

### a.  Correlation with Age

Plaintiffs argue that the longstanding United Policy is unlawful on its face because it is connected to an employee's age.  In *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), the Supreme Court was presented with an ADEA discrimination claim in an action where the plaintiff asserted that he was fired to prevent his pension benefits from vesting.  507 U.S. at 606, 609.  The court in *Hazen* held that a policy that may correlate with age is not necessarily a violation of the ADEA.  *Id.* at 611 (stating that "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears" and that "[t]his is true even if the motivating factor is correlated with age"); s*ee also Teufel v. N. Tr. Co.*, 887 F.3d 799, 803 (7th Cir. 2018) (stating that "[b]ecause salary generally rises with age, and an extra year of credited service goes with an extra year of age, the plan's criteria are correlated with age—but both *Kentucky Retirement Systems* and *Hazen Paper* hold that the[] pension criteria differ from age discrimination"); *Maglieri v. Costco Wholesale Corp.*, No. 16 CV 7033, 2018 WL 1316735, at *4 (N.D. March 14, Ill. 2018) (citing *Hazen* for proposition that "'[t]he ADEA prohibits employers from relying on age as a proxy for an employee's [work-related] characteristics, such as productivity,'" but that "it does not bar employers from focusing directly on work-related characteristics themselves") (internal quotations omitted) (quoting in part *Hazen*, 507 U.S. at 611).  The Court in *Hazen* concluded that although an employee's pension status might correlate to the employee's age, pension status and

age are not the same, and that discrimination based on pension status was not the same as discrimination based on age. 507 U.S. at 610 (stating that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based'").

In the instant action, the United Policy also correlates to some extent with age because of the limitations provided under federal law for flying the line. Discrimination based on the inability to fly the line, however, is not the same as discrimination based on age. It is true that unlike in *Hazen*, because of federal law, the United Policy is indirectly connected to a definitive age requirement. However, flying the line is indirectly tied to a variety of other factors such as the requisite prior service and training and medical status, as well as age. There are even subcategories with the medical status category that are considered including vision, hearing, mental health, and neurologic health. Age is one of many areas that are considered in determining whether someone can fly the line. The Court in Hazen indicated that the ADA merely "requires the employer to ignore an employee's age. . . ." *Id.* The undisputed facts show that since 1989 United has held a belief that flying the line has training value and, as in *Hazen*, United can "take into account" whether an I/E has the experience of recently piloting commercial flights "while ignoring" the age of the I/E. *Id.* at 611.[6] The Court in *Hazen* made clear that "[i]n a disparate treatment case, liability depends on whether the protected trait (under

---

[6] Plaintiffs also cite to *Johnson v. State of N.Y.*, 49 F.3d 75 (2d Cir. 1995) in support of their arguments. *Johnson*, is not controlling precedent and is not consistent with the Seventh Circuit's repeated admonitions that this court does not sit as a superpersonnel department telling companies how to run their business. In fact, the dissenting opinion in *Johnson* pointed to *Hazen* and its admonition that "[t]he ADEA is concerned with the role that age plays in the employer's decision to terminate." *Id.* at 81. The dissenting opinion concluded that "[t]he reason" that the plaintiff lost the status necessary for employment "is immaterial, since it played no part in the actual decision to terminate his employment." *Id.* Similarly, in the instant action, the evidence indicates that United terminated Plaintiffs' employment because they lost their status necessary for employment. Absent facts indicating a hidden motive on the part of United, for a disparate treatment claim, it is immaterial whether that Plaintiffs indirectly lost their status due to age, medical reasons, or lack of training.

the ADEA, age) actually motivated the employer's decision." *Id.* at 610. The relevant inquiry in this case is thus whether United was honest in regard to its given reason for its decision to include the United Policy in the UPA or whether it was a pretext for unlawful discrimination. United may believe the best trained I/Es are those that can fly the line. Plaintiffs cannot ask the trier of fact at trial to speculate that United's expressed belief masked a desired animus to discriminate against I/Es based on age or to discriminate against I/Es based on the myriad of other factors associated with being able to fly the line.

To the extent that Plaintiffs believe that they should be allowed to fly commercial line flights, their dispute is not with United. Rather, their dispute is with the federal law that limits their ability to fly the line based on age. Plaintiffs contend that they were subjected to an "arbitrary age limit" but it was federal law, not United that subjected Plaintiffs to an age limit. (P. Opp./SJ at 17). Nor is there any evidence that United would have taken steps to prevent Plaintiffs from serving as I/Es if federal law had allowed them to fly the line.[7] Plaintiffs refer to the end of their employment as a "forced retirement," but no such retirement was forced upon Plaintiffs by United. (P. Opp./SJ at 8-9).[8] To the extent that Plaintiffs were unable to work for United as I/E's, it was based on their inability to fly the line, not on their age. Any younger I/Es who had a medical condition that precluded them from flying the line were likewise unable to work for United. Thus, the mere fact that the United Policy is indirectly connected to age does not mean that the United Policy is unlawful on its face.

---

[7] The FAA age limitation for pilots is not written in stone and can change. In 2007, the age limit was raised from 60 to 65 in the Fair Treatment for Experienced Pilots Act of 2007. *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 917 (D.C. Cir. 2013).

[8] The court notes that undisputed facts show that other jobs were available to Plaintiffs at United during the grace period, but Plaintiffs did not seek other positions except for a surplus bid form for their same position. (R USOF ¶¶ 85-87). The court also notes that despite the fact that Plaintiffs were not qualified to fly the line, Plaintiffs were allowed to work during the grace period and received a significant pay increase over what they had earned with Continental. (R USOF ¶ 59).

b. References to Age in Emails

Plaintiffs contend that United and ALPA representatives made references to Plaintiffs' age in internal emails, which Plaintiffs argue shows an animus against Plaintiffs because of their age. (P. Opp./SJ at 21).[9] Plaintiffs incorrectly assert that the emails were "internal communications during the negotiations of the collective bargaining agreement. . . ." (P. Opp./SJ at 21). In the instant action, Plaintiffs assert that United discriminated against them when United agreed to include the United Policy in the UPA and the UPA became effective in December 2012. The emails identified by Plaintiffs do not involve discussions during the negotiation of the UPA. Instead, they involve the post-merger implementation of the UPA in 2013 and thus are not evidence of United's intentions during the negotiations of the UPA.

Even if the emails were from the relevant time period, a close look at the references to age in the context of the statements in the messages does not indicate any animus based on age. While there are references in the emails to I/Es over the age of 65, the references to age are factual statements that are not accompanied by any derogatory statements or other facts that would suggest an animus against older I/Es. For example in one email, the sender discusses treatment of "existing I/E's who are over age 65." (P. Ex. 15: UAL006218).[10] The parties discuss in the emails matters that included how I/Es over the age of 65 could be impacted by UPA. In another email there is a statement by a representative that "[s]ome of the guys in [his] base are concerned that they, (over 65), will be ineligible for the early out blocking an active

---

[9] The court notes that Plaintiffs also argue in their memorandum in support of their partial motion for summary judgment that Plaintiffs were told by former Continental representatives that United ALPA representatives pushed hard to remove I/Es over the age of 65. (P. Opp./SJ at 22). Plaintiffs, cite only to their statement of facts to support such facts, but Plaintiffs' cited statement of facts contain no such facts or supporting evidence. (P. Opp./SJ at 22).
[10] Plaintiffs' Exhibit 15 in this case is the same as Plaintiffs' Exhibit 42 in case number 14 C 6415.

Pilot and also utilizing Jumpseat privileges as an inactive Pilot also bumping an active Pilot." (P. Ex. 15 at ALPA0004149). A discussion then follows concerning the issue at hand regarding such employees. In another email, the parties discuss whether "LOA 18 allow[ed] the three>65 to stay at the IAH training center until the 12-months period [was] up." (P. Ex. 15 at UAL006231). Plaintiffs point to no sinister statements in the emails or other facts that would suggest an unlawful motive on the part of United or ALPA.

It is also apparent that the references to age in the emails are between individuals who are well versed in the issues at hand and reflect the significance of being over the age of 65 and its connection to flying the line. It is clear that the references to "65" are references to the age limit under federal law for flying the line. The mere fact that age is referenced does not alone indicate any animus based on age. The fact that the emails consistently reference the age of 65 shows the connection to the FAA age regulation, and there is even a specific reference in the emails to the "FAA mandatory retirement age." (P. Ex. 15 at ALPA0004981). Finally, although Plaintiffs claim that the emails refer to "old guys," a review of the many pages of emails in the exhibit shows that there is only one reference to "old guys." (P. Ex. 15 at ALPA0004088). Although the reference could be considered disrespectful or insensitive, it is just one phrase among many respectful references in the emails to the I/Es "over age 65," the I/Es "over 65," the "over 65 guys," the "over 65'ers," the "over 65 Pilots," and the "over 65 folks." (P. Ex. 15). Thus, the emails pointed to by Plaintiffs fail to support their age discrimination claims because they are not from or about the relevant time period and, even if they were, they fail to indicate any unlawful animus based on age.

<u>c. Comparator</u>

Plaintiffs also fail to point to any comparator outside the protected class who was treated more favorably than them. One aspect of the *McDonnell Douglas* burden-shifting method referenced above is a showing by the plaintiff that "similarly situated employees outside of [his] protected class were treated more favorably by the employer." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (quoting *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)) (internal quotations omitted).

The only individual that Plaintiffs point to in response to United's motion for summary judgment is Tom Howard. (Plaintiffs Statement of Undisputed Material Facts in Opposition to United's Motion for Summary Judgment "PSOF OP" Dkt. No. 99-3 ¶ 25). Plaintiffs contend that Howard was a younger I/E who lost his medical certificate and could not fly the line. (PSOF OP ¶ 25). Plaintiffs claim that Howard was given a 30-month grace period before he had to retire at age 65 and that he was thus given a longer grace period than Plaintiffs.[11] (PSOF OP ¶ 25). Plaintiffs, however, cite to no admissible evidence to support such a fact. (PSOF OP ¶ 25). Plaintiffs cite only to page 259 and 260 of the United Exhibit that is Rina's deposition transcript, but the transcript is only 253 pages long. (PSOF OP ¶ 25); (U. Ex. 111). In addition, there is no reliable foundation indicating how Rina learned about Howard. Thus, Paragraph 25 is stricken for failure to comply with Local Rule 56.1.

Even if Plaintiffs had pointed to admissible evidence to support Paragraph 25, the comparison made by Plaintiffs to Howard does not indicate an unlawful disparate treatment.

---

[11] The court notes that although United's filings are somewhat unclear, United appears to indicate that Howard may have received only a 12-month grace period. (R PSOF OP ¶ 25); (United Statement of Additional Facts in Opposition to Plaintiffs' Motion for Summary Judgment "USAF" Dkt. No. 120 ¶ 14); (United's Combined Memorandum of Law in Opposition to Plaintiffs' Partial Motion for Summary Judgment and Reply in Support of its Motion for Summary Judgment "U. Reply" Dkt. No. 117 at 21, n.17 ).

After the merger and the effective date of the UPA, Plaintiffs were not seeking a longer grace period before their retirement. In the June 2013 Letter Plaintiffs asked that their seniority be restored and the mandatory retirement be rescinded. (P. Ex. 33); (Doyle Dep. Ex. 9, 26). In regard to not having seniority restored and mandatory retirement rescinded, Plaintiffs and Howard were treated exactly the same. Plaintiffs have not pointed to evidence showing that they ever raised the issue of the length of the grace period prior to retirement before bringing this action.

United also indicates that Howard is not similarly situated to Plaintiffs because Howard had a disability and under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, United was required to reasonably accommodate Howard's disability. (United Memorandum in Support of its Motion for Summary Judgment "U. SJ" Dkt. No. 72 at 14 n.3.) Without more, Howard is also not a proper comparator for ADEA purposes because although Plaintiffs state that Howard was younger, Plaintiffs assert that Howard was only 30 months from his 65th birthday. (PSOF OP ¶ 25). "The Supreme Court has observed that if an employee who is in the class protected by the ADEA is replaced by someone who is not 'substantially younger' (i.e., ten years or so), no inference of age discrimination is generally appropriate." *Runyon v. Applied Extrusion Techs., Inc.*, 619 F.3d 735, 740 (7th Cir. 2010) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996)). Plaintiffs have not shown that Howard was substantially younger than them, or that United considered the difference significant. Thus, Plaintiffs have failed to properly identify a comparator outside the protected class who was treated more favorably.

### d.  Furloughs

Plaintiffs also theorize that another reason United may have engaged in age discrimination is to find spots for furloughed pilots.  (Plaintiffs Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment "PSOF" Dkt. No. 99-3 ¶ 14).  It is undisputed that at the relevant time there were approximately 1,400 pilots on furlough.  (PSOF ¶ 14).  The impact that Plaintiffs' three positions would have had on such a number would have been *de minimis.*  Plaintiffs fail to point to evidence to show that the decision to adopt the United Policy was in any way connected to the need to find spots for pilots on furlough and it would be nothing more than speculation to conclude that United violated the ADEA in order to fill three of those 1,400 spots.


### e.  Adoption of Continental's AQP

In an effort to show that United did not initially plan to implement the United Policy, Plaintiffs point out that United initially adopted the AQP of Continental after the merger. (P. Opp./SJ at 22-23).  United admits that at the time of the merger Continental's AQP was adopted. (USOF ¶ 38).  United, however, also provides evidence showing that it was always the understanding of the parties at the time of the merger that Continental's AQP was adopted subject to a transition plan.  (USOF ¶ 38).  Plaintiffs have not cited any evidence that would genuinely call such facts into question.  (R USOF ¶¶ 37-39).  The undisputed facts show that during the transitional period, United began to implement the AQP Integration Plan and that, as anticipated at the time of the merger, the AQP was eventually officially amended with the FAA to include the United Policy.  Thus, the fact that United may have initially agreed to the

Continental AQP is merely a red herring and is not relevant in assessing whether United had an unlawful animus against Plaintiffs because of their age.

### f.  Wisdom of the United Policy

Plaintiffs also present arguments that focus upon the wisdom of the United Policy. Plaintiffs tout their experience and qualifications and argue that they are better qualified than other younger I/Es.  While Plaintiffs are entitled to their opinions, ALPA and United are likewise entitled to the opinion that an I/E who could fly the line was better qualified.  Plaintiffs have not shown that any of the younger I/Es were unqualified for the position or that Plaintiffs were clearly more qualified.

Plaintiffs challenge the opinion of United and its expert witness Captain Jameel F. Joseph that flying the line cannot be replicated in a simulator or by sitting in a jump seat and observing pilots.  Joseph concludes that "Instructors and Evaluators gain relevant experience and knowledge from recently operating an aircraft in revenue service that cannot be gained from operating airplane simulators or from observing line operations from the jumpseat."  (P. Ex. 22 at 17).  Joseph indicates in his declaration facts to support his conclusion such as the following:

> Flight operations, by definition, begin well in advance of the line pilot entering the cockpit, and are fluid and dynamic in nature, with each leg of each trip being distinctly different.  The ability to dispatch a flight with known mechanical deficiencies, for instance, will determine operational restrictions or unique procedures, with very little time for the flight crew to make critical decisions and fully comprehend the impact of these mechanical deficiencies and there operational consequences.  This pressure cannot be simulated and cannot be shared through observation.  Only I/Es with recent line-operational experience, under these circumstances, can relate to, identify, adjust, and translate these pressures and experiences into actual training and evaluation – such exposure cannot be simulated.

(Joseph Decl. ¶ 8). Joseph also states that "[e]ach airport has unique local procedure[s] for ground aircraft movement, and often construction activities will directly impact critical ground movement," and "[a]ctual, not simulated, interaction with these conditions by the I/E cadre will not only familiarize them with the unique set of actual operational circumstances but also provide first-hand experience with the challenges the line pilots may experience." (Joseph Decl. ¶ 8). Joseph also explains how familiarity and actual experience dealing with unique factors in take-off/departure/climb procedures, en route procedures, and decent/arrival/landing procedures make actual line experience superior to any experience in a simulator or viewing from a jump seat. (Joseph Decl. ¶ 8). Plaintiffs clearly disagree with Joseph's conclusions and believe that the same experience can be gained through a simulator or by sitting in a jump seat. Plaintiffs have not pointed to evidence that shows that training in a simulator which seeks to replicate as best as possible the actual flight experience or sitting in a jump seat can provide the exact same experience as actually piloting a commercial flight. Plaintiffs are asking this court to find that their proposed training is the equivalent to flying the line. Absent a showing that the United Policy was a pretext for age discrimination, however, this court in not a proper venue to litigate the wisdom of United's business decisions.

Plaintiffs argue that there is no empirical evidence that shows that the United Policy makes better-trained I/Es. United, however, is not required to provide studies and other empirical evidence to support its policy. The United Policy is not on trial in this case. The issue before the court is whether United used the policy as a pretext to discriminate based upon age. Plaintiffs contend that they have evidence that the newest simulators are very good at replicating the "feel of the aircraft" and that actually flying the line is not necessary. (PSOF OP ¶ 3). Even if Plaintiffs could point to sufficient evidence to show that they are right and United was

mistaken in believing that the United Policy was superior to other training programs that rely upon simulators, Plaintiffs cannot prevail. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (stating that "[p]retext is not necessarily established merely when the plaintiff demonstrates the employer's reason was mistaken"). It is not role of this court to interfere with United's training policies unless such policies are unlawful or unsafe.[12] *See Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) (stating that "courts are not superpersonnel department[s]" charged with determining best business practices") (internal quotations omitted) (quoting *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)).

Plaintiffs also contend that federal law does not require I/E's to fly the line and that other airlines employ NLQFIs. Such facts are irrelevant. United is not required to follow the minimum under federal law. Nor is United required to follow training practices simply because its competitors follow them. If United's training is inferior to other airlines as Plaintiffs claim, then the free market will reward other more forward-thinking airlines.

In *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616 (7th Cir. 2001), the Seventh Circuit was presented with similar facts as in the instant action. In that case, the plaintiff applied for a position that required an applicant to have one of several degrees such as Education. *Id.* at 621. The plaintiff argued that the qualification was not reasonable and that the employer should have considered the plaintiff's experience to be the equivalent as the required degree. *Id.* The Court concluded that it did not need to "decide whether it is reasonable for an employer to place value on the actual receipt of a particular degree, irrespective of the applicant's experience," and the Court declined to "presume to mandate that the [employer] equate [the plaintiff's] teaching experience with an actual degree in Education." *Id.* The Court then proceeded to indicate that

---

[12] Plaintiffs have not pointed to any evidence that shows that the United Policy, which has been in place since 1989, has created any material risks to the safety of operations in any flights.

"[w]hat the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with" and that the Court does not "tell employers what the requirements for a job must be." *Id.* (internal quotations omitted) (quoting *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 765 (7th Cir. 2001)). Similarly in the instant action, Plaintiffs are attempting to get this court to mandate that United find that training in a simulator or sitting in a jump seat is the equivalent to flying the line. As in *Schaffner*, this court will likewise refrain from telling an employer how to operate its business in regard to conduct that does not run afoul of the law.

The Seventh Circuit has made it clear that in employment discrimination cases, the court does "not act as a 'superpersonnel department.'" *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 710 (7th Cir. 2017); *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 883 (7th Cir. 2016) (stating that the "record d[id] not suggest that [the defendant's] rationale was insincere or pretextual, and [the Court does] not sit as a superpersonnel department[ ] that judges the wisdom of [the defendant's] decisions") (internal quotations omitted) (quoting *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010)); *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 878 (7th Cir. 2014) (stating that "[a]s [the Court has] stated repeatedly, it is not [the Court's] province to sit as a super-personnel department evaluating the wisdom of an employer's staffing decisions"); *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999) (stating that "as [the Court has] noted on numerous occasions, th[e] Court does not sit as a superpersonnel department that reexamines an entity's business decisions") (internal quotations omitted) (quoting *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 300 (7th Cir. 1998)). That is exactly what Plaintiffs are asking the court to do in this case.

As indicated above, Plaintiffs can utilize the *McDonnell Douglas* burden-shifting method to establish a prima facie case of discrimination. If a defendant offers a legitimate non-discriminatory reason for its actions, the plaintiffs must show that the reason is a pretext for unlawful discrimination. *Bates v. City of Chicago*, 726 F.3d 951, 956 (7th Cir. 2013). As part of that method, Plaintiffs must establish that ALPA's legitimate non-discriminatory reason was a pretext for unlawful discrimination. *Id.* The Seventh Circuit has indicated time and time again that "[t]he focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Id.* (internal quotations omitted) (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)); *see also Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (stating that "[a]n unwise employment decision does not automatically rise to the level of pretext; rather, a party establishes pretext with evidence that the employer's stated reason or the employment decision 'was a lie—not just an error, oddity, or oversight'") (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)); *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007) (stating that "[t]he focus of a pretext inquiry is whether the employer's reason is honest, not whether it is accurate or wise"). The Seventh Circuit has stated that in an ADEA case, the court must remain focused on whether there is discrimination based on age and be mindful that it is not the court's "role to question the wisdom of a company's decisions on how to run its business, only to assure that such decisions are not intended to provide cover for illegal discrimination." *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946–47 (7th Cir. 2006)).

Although Plaintiffs criticize United's belief that flying the line helps an I/E to become better at his or her job, Plaintiffs have not shown that United's given reason is other than a legitimate non-discriminatory reason for its actions. The court acknowledges that in certain

situations where actions by a company are extremely unwise from a business standpoint, such conduct could be suspicious, and could be circumstantial evidence that might be used to support an ADEA claim. In this case, however, Plaintiffs have fallen far short of pointing to evidence to support such a theory.[13] Joseph provides ample details concerning the rationale underlying the United Policy. The fact that the policy has been in place since 1989 further suggests its justifiable basis and renders United's decision to include it in the UPA less suspicious.

Plaintiffs argue that whether United's decision to adopt its long standing policy in the UPA was "honestly arrived at is a question of fact." (P. Opp./SJ at 11). While that is true, Plaintiffs must also do more than rely on their allegations and must point to sufficient evidence for a reasonable trier of fact to do more than speculate that United's decision to continue a longstanding policy concealed some hidden animus based on age. *See Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (stating that "[a]s the put up or shut up moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial") (internal quotations omitted) (quoting *Harney v. praSpeedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). Plaintiffs have failed to point to sufficient evidence for a reasonable trier of fact to find in their favor.

---

[13] The Seventh Circuit has stated that "the more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held," but "[a]n inquiry into pretext requires that [the Court] evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 795 (7th Cir. 2015) (internal quotations omitted) (quoting *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001) and *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 506 (7th Cir. 2014)). The Court further explained that "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain [its decision.]" *Id.* (internal quotations omitted). It is important to note that in the facts of this case, the policy in question that is connected to age is logically connected to the I/E position. The policy simply requires that I/Es have current real life experience in the precise piloting tasks that they are expected to teach pilots. Such a requirement clearly falls within the broad range of reasonableness.

Finally, as stated above, it is important to note that in order to succeed on their ADEA claims, Plaintiffs must show more than it is possible that age was a consideration in United's decision making process. *See Gross*, 557 U.S. at 174 (stating that "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor"). Plaintiffs must show that age "'had a determinative influence on the outcome.'" *Mullin*, 732 F.3d at 776 (quoting *Van Antwerp*, 627 F.3d at 297). Based on the above, even when considering the evidence in its totality and viewing it in a manner most favorable to Plaintiffs, no reasonable fact finder could find in Plaintiffs' favor on the ADEA disparate treatment claims or state law age discrimination claims. Therefore, United's motion for summary judgment on that ADEA disparate treatment claims and state law age discrimination claims is granted and Plaintiffs' partial motion for summary judgment on such claims is denied.

2.  ADEA Disparate Impact Claims

The parties contend that they have pointed to sufficient evidence to prevail as a matter of law on the ADEA disparate impact claims. A plaintiff pursuing an ADEA disparate impact claim must establish a prima facie case by showing that a "specific, facially neutral employment practice caused a significantly disproportionate adverse impact based on age" and "proffer statistical evidence that the policy caused a significant age-based disparity . . . ." *Carson v. Lake Cty., Indiana*, 865 F.3d 526, 536 (7th Cir. 2017) (internal quotations omitted) (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 68 (3d Cir. 2017)); *Filipek v. Oakton Cmty. Coll.*, No. 16 CV 2902, 2018 WL 1064577, at *6 (N.D. Ill. Feb. 27, 2018) (stating that a plaintiff bringing an ADEA disparate impact claim "must provide statistical evidence of a significant age-

based disparity and must also isolate and identify the specific employment practice that she contends is responsible for that disparity"); *Spriesch v. City of Chicago*, No. 17 CV 1952, 2017 WL 4864913, at *5 (N.D. Ill. Oct. 26, 2017) (stating that "[a] disparate impact theory of discrimination requires the plaintiff to put forth evidence (facts or statistics) demonstrating that the challenged employment practice has a disproportionately negative effect upon members of the protected class") (internal quotations omitted) (quoting *Anfeldt v. United Parcel Serv., Inc.*, No. 15 CV 10401, 2017 WL 839486, at *2 (N.D. Ill. March 3, 2017)); *Aberman v. Bd. of Educ. of City of Chicago*, 242 F. Supp. 3d 672, 685 (N.D. Ill. 2017) (stating that a plaintiff must identify the specific employment practice, . . . and establish causation by offering statistical correlation evidence demonstrating that a specified employment practice of the defendant has a disproportionately negative effect on members of the plaintiff's protected class") (internal quotations omitted) (quoting *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996)).

In response to United's motion, Plaintiffs point to no statistical evidence or facts to detail the disparate impact and instead provide one sentence stating that the percentage of older workers impacted "is 100%," and Plaintiffs provide a conclusory statement that the percentage is "about as disproportionate as statistics will allow." (P. Opp./SJ at 11). Plaintiffs must offer more than a one-sentence conclusory statement to meet their burden at the summary judgment stage. Nor is the statistical analysis as obvious as Plaintiffs propose. The United Policy requires that I/Es be able to fly the line. There could, for example, be employees impacted by the policy that have medical problems and cannot fly the line. A statistical analysis would need to be conducted for all such potential groups affected by the United Policy and not affected by the United Policy to show that the policy caused a significant age-based disparity. Plaintiffs present no such analysis. In the portion of Plaintiffs' own memorandum devoted to the support of their

partial motion for summary judgment, Plaintiffs present an analysis only for the disparate treatment claims and do not even reference the disparate impact claims. Therefore, United's motion for summary judgment on the ADEA disparate impact claims is granted and Plaintiffs' partial motion for summary judgment on such claims is denied.[14]


## CONCLUSION

For the reasons set forth above, United's motion for summary judgment [70] is granted and Plaintiffs' partial motion for summary judgment [109] is denied. Civil case terminated.


Date: 6/4/18

_____
Jorge L. Alonso
United States District Judge

---

[14] Since Plaintiffs have failed to point to sufficient evidence to support a prima facie case for the ADEA claims, the court need not address United's bona fide occupational qualification "BFOQ" affirmative defense or reasonable factor other than age affirmative defense. The Court also notes that Plaintiffs cite to *W. Air Lines, Inc. v. Criswell*, 472 U.S. 400 (1985). (P. Opp./SJ at 13). The issue before the court in *Criswell* was "whether the jury was properly instructed on the elements of the BFOQ defense." *Id.* Since the court did not reach the BFOQ defense, *Criswell* is not applicable.